**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

TIA L. BROWN,

    Plaintiff,

    v.

IVAN BATES, *et al.*,

    Defendants.

Civil Action No.:  SAG-25-02775

**MEMORANDUM OPINION**

Self-represented plaintiff Tia L. Brown ("Plaintiff") filed the above-captioned Amended Complaint against three current and former State's Attorneys for Baltimore City ("the State's Attorney Defendants"), the Clerk of the Circuit Court for Baltimore City, and eight judges of the Circuit Court ("the Judicial Defendants" and, collectively with the State's Attorney Defendants and the Clerk, "Defendants"). ECF 14. Defendants filed a motion to dismiss, ECF 19, Plaintiff filed an opposition, ECF 21, and Defendants filed a reply, ECF 24. Plaintiff then filed a motion for leave to file a surreply, ECF 25, which will be granted and considered in connection with the motion to dismiss. This Court has carefully reviewed all of the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons stated herein, Defendants' motion to dismiss will be granted.

## I.    Factual Background

The following facts[1] are derived from the Amended Complaint, ECF 14, and taken as true for purposes of this motion:

In August, 2010, Plaintiff's child's father removed her infant son from her physical custody. *Id.* ¶ 16. Plaintiff sought emergency relief in the Circuit Court for Baltimore City, but the then-Court Clerk told her such relief was unavailable. *Id.* ¶ 17. Plaintiff was then coerced into entering a Temporary Custody Agreement in September, 2010. *Id.* ¶ 18.

During a hearing in February, 2011, Judge John Addison Howard entered an order awarding full custody to the father during the pendency of a state court proceeding in Kentucky. *Id.* ¶¶ 19–22. Judge Howard declined to take up various issues Plaintiff raised during the proceeding. *Id.* Plaintiff filed a timely motion to alter or amend Judge Howard's order, but "clerk personnel" held the motion for twenty-one days before presenting it to the judge. *Id.* ¶¶ 24–25. During that period, criminal charges were initiated by then-State's Attorney Gregg Bernstein. *Id.* ¶¶ 26–32.

Plaintiff next describes a "2011 Plea Disposition" before Judge Yolanda Tanner, making a series of apparent arguments about the validity of the charges and disposition. *Id.* ¶¶ 33–40. In October or November of 2017, in response to a motion, Judge Kendra Ausby entered a *nunc pro tunc* order adjusting the custody status and "referencing 2014." *Id.* ¶¶ 42–44. Plaintiff alleges that

---

[1] Plaintiff's Amended Complaint repeatedly insists that it is targeting "ongoing constitutional injuries" and does not seek "appellate review, reversal, or invalidation" of state court rulings. ECF 14 at 1. This Court is not bound, however, by legal characterizations within a complaint and must evaluate the sufficiency of the facts alleged in determining whether a viable legal claim has been stated. Additionally, this Court notes that the actual facts alleged in the Amended Complaint are not a model of clarity, as it appears that multiple court proceedings were ongoing in multiple jurisdictions over a sixteen-year period.

Judge Ausby neglected to consider the 2015 administrative closure of the custody case. *Id.* ¶¶ 41, 45–46.

Plaintiff next describes a "2017 Criminal Trial" before Judge Christopher Panos, again summarizing a number of arguments about "procedural irregularities" she alleges she did not get to litigate. *Id.* ¶¶ 48–53. She makes similar arguments about a "2019 Retrial" before Judge Sylvester Cox. *Id.* ¶¶ 54–58. And she further alleges that Judge Jennifer Schiffer mishandled pretrial proceedings and that Judge Dana Middleton mishandled post-trial proceedings. *Id.* ¶¶ 59– 68. Finally, she contests the handling, by Judge Audrey J.S. Carrion, of her administrative review proceedings. *Id.* ¶¶ 71–75.

Plaintiff also alleges that "clerk personnel" did not timely present her motions to the motions judge, calendar hearings, or maintain records of proceedings. *Id.* ¶¶ 77–81. She also alleges that then-State's Attorney Marilyn Mosby continued to prosecute her and opposed defense requests for grand jury materials needed for her defense.[2] *Id.* ¶¶ 83–87.

## II.    Legal Standards

Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

---

[2] The caption of this section of the Amended Complaint also references the present State's Attorney, Ivan Bates, but there are no factual allegations specifying any actions taken by Mr. Bates.

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts]

4

in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). But a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Because Plaintiff is self-represented, her pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, Civ. No. DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), *aff'd*, 526 F. App'x 255 (4th Cir. 2013).

Moreover, a federal court may not act as an advocate for a self-represented litigant. *See Brock v. Carroll*, 107 F.3d 241, 242–43 (4th Cir. 1997) (Luttig, J., concurring in judgment); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Therefore, the court cannot "conjure up questions never squarely presented," or fashion claims for a self-represented plaintiff. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985); *see also M.D. v. Sch. Bd. of Richmond*, 560 F. App'x 199, 203 n.4 (4th Cir. 2014) (rejecting self-represented plaintiff's argument that district

court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint).

## III. Analysis

Plaintiff's claims are subject to dismissal for several independent reasons. This Court will not reach every argument presented in Defendants' memorandum but will address several of the most determinative below.

### A. Eleventh Amendment Immunity

Initially, suits against the State of Maryland, its agencies, and officials acting in an official capacity are barred under the Eleventh Amendment, absent consent. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.") (citing *Fla. Dep't of Health & Rehab. Servs. v. Fla. Nursing Home Ass'n.*, 450 U.S. 147 (1981) (per curiam)). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-201(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Halderman*, 465 U.S. at 99 (emphasis in original).

Plaintiff has not expressly named the State as a defendant, but each named Defendant is a state official sued in his or her official capacity. State's Attorneys, Circuit Court Judges, and the Clerk of the Circuit Court are "State personnel." Md. Code. Ann., State Gov't § 12-101(a)(1), (8), (11). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted). While

Plaintiff's Amended Complaint alleges that she "seeks damages against Defendants in their individual capacities for constitutional injuries caused by actions taken outside lawful authority," ECF 14 ¶ 9, the Amended Complaint contains no factual allegations describing such actions. Each action allegedly taken or not taken by a Defendant was in the context of executing their official duties and not a matter of personal action outside their lawful authority. *See Borkowski v. Balt. Cnty.*, 414 F. Supp. 3d 788, 808 (D. Md. 2019) (requiring allegations of "personal fault based upon a defendant's own conduct").

Plaintiff also attempts to avail herself of the limited exception to Eleventh Amendment immunity described in *Ex parte Young*, 209 U.S. 123 (1908). That doctrine excepts claims that are solely for prospective injunctive relief to prevent ongoing constitutional violations and it "does not permit judgments against state officers declaring that they violated federal law in the past." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

*Ex parte Young* does not apply to Plaintiff's case because she has not alleged an ongoing constitutional violation by any of the Defendants. From Plaintiff's perspective, she has been unable to obtain her desired results from the Baltimore City Circuit Court, as a whole, for well over a decade. But that overall experience does not transform the acts of any one of the twelve Defendants she has sued into an ongoing constitutional violation. Several of the named Defendants no longer hold their offices and clearly are not engaged in ongoing actions. And others who still hold their positions are not alleged to have had any involvement with Plaintiff's matters for many years.

It is also evident from the nature of the relief Plaintiff seeks that she is not solely focused on prospective injunctive relief. In addition to her claim for monetary damages, she asks for declaratory relief regarding the validity of past actions. ECF 14 at 15. She further asks this Court to enjoin enforcement of existing state court orders, which constitutes an indirect challenge to their

validity despite Plaintiff's insistence that she does not challenge any state court judgments through this case.

Ultimately, because Plaintiff has not identified any Defendant presently violating her constitutional rights, but has only focused on their past conduct, the *Ex parte Young* exception does not apply, and the State officials are entitled to Eleventh Amendment immunity.

### B.  Judicial Immunity

Plaintiff's claims against the eight Circuit Court Judges are also barred by the doctrine of judicial immunity. *See Forrester v. White*, 484 U.S. 219, 226–27 (1988) ("If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits."). The doctrine of judicial immunity shields them from monetary claims against them in both their official and individual capacities. *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991) (per curiam). Judicial immunity is an absolute immunity; it does not merely protect a defendant from assessment of damages, but also protects a judge from damages suits entirely. *Id*. at 11. An act is still judicial, and immunity applies, even if the judge commits "grave procedural errors." *Stump v. Sparkman*, 435 U.S. 349, 359 (1978).

Moreover, "judges . . .are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Id.* at 355–56 (quoting *Bradley v. Fisher*, 13 Wall. 335, 351 (1871)); *see Dean v. Shirer*, 547 F.2d 227, 231 (4th Cir. 1976) (stating that a judge may not be attacked for exercising judicial authority even if done improperly).

In *Pierson v. Ray*, 386 U.S. 547 (1967), the United States Supreme Court granted certiorari to consider whether a judge was liable for damages under 42 U.S.C. § 1983 for an unconstitutional conviction. In explaining its rationale for judicial immunity, the Court stated:

> Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction . . . . This immunity applies even when the judge is accused of acting maliciously and corruptly, and it "is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation.

*Id.* at 553–54 (citation omitted).

The bar of absolute judicial immunity may be overcome in two limited sets of circumstances: (1) "for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity"; and (2) "for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11–12 (citing *Forrester at* 227–29). A judge acts in a judicial capacity when the function is one "normally performed by a judge" and when the parties "dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362. The "relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.'" *Mireles*, 502 U.S. at 13 (quoting *Stump*, 435 U.S. at 362).

Courts thus look to an "act's relation to a general function normally performed by a judge" to determine whether the act was judicial. *Id.* at 13. Plaintiff's claims against each judge stem from actions taken by that judge during court proceedings involving Plaintiff, which is precisely the type of judicial action covered by judicial immunity. Although Plaintiff attempts to frame some of the judges' actions as "[a]dministrative or non-judicial," ECF 21 at 3, she cites no authority suggesting that engagement of administrative tasks inherent in the judicial function (such as

calendaring or assignment decisions) is outside the scope of judicial immunity. Her sole citation, *Gibson v. Goldston*, 85 F.4th 218 (4th Cir. 2023), is a case in which a judge participated in traditionally executive functions including the search of a home and seizure of its contents. Those tasks clearly lie outside of the judicial function, rendering *Gibson* inapposite. Defendants here are entitled to judicial immunity for their judicial actions, and the claims against them must be dismissed.

### C. Prosecutorial Immunity

Similarly, the three State's Attorney Defendants are entitled to absolute prosecutorial immunity for most of the conduct Plaintiff alleges. *See Imbler v. Pachtman*, 424 U.S. 409, 422–23 (1976). Seemingly in recognition of that fact, Plaintiff focuses her opposition on "conduct involving the administrative handling of court records, the status of a dismissed case, and the procedural handling of jurisdictional review requests," which she alleges to be administrative and not prosecutorial in nature. ECF 21 at 3. But those allegations are absent from her Amended Complaint, as she has not alleged any personal participation by any of the three State's Attorney Defendants in the handling of court records or case status.[3] As to Ms. Mosby, the Amended Complaint argues that she "opposed defense requests seeking access to grand jury materials," ECF 14 ¶ 83, which is a prosecutorial function. Similarly, as to Mr. Bernstein, the Amended Complaint asserts that he "authorized and continued prosecution" of the case against her and that production of grand jury transcripts "was not authorized." *Id.* ¶¶ 29–32. Those issues, where the prosecutors took a legal position during the contested criminal proceeding, are prosecutorial and covered by immunity.

---

[3] In fact, as noted above, she has not alleged any actions by Mr. Bates at all.

Plaintiff does later allege that "In 2024, the State acknowledged that no witness testified before the grand jury and that transcripts could not be located." *Id.* ¶ 69. But her allegations do not connect that fact to the actions of any of the three State's Attorney Defendants, nor is it plausible that those high-ranking elected officials had personal responsibility for records maintenance. Because a § 1983 claim requires personal conduct taken to violate another's constitutional rights, *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009), Plaintiff has not stated a viable claim against any of the State's Attorney Defendants.

### D. Failure to State a Claim

Finally, Plaintiff has failed to state a claim against the Clerk of Court, Xavier Conaway. The actions she complains about, according to her own allegations, were committed by "clerk personnel," not Mr. Conaway himself. "In a § 1983 suit . . . —where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft*, 556 U.S. at 677. Plaintiff has not pleaded any actions taken by Mr. Conaway himself to violate her constitutional rights. The claims against him must be dismissed.

For the foregoing reasons, both Plaintiff's Motion to File Surreply, ECF 25, and Defendants' Motion to Dismiss, ECF 19, will be GRANTED. This case will be closed.

A separate Order follows.


_June 1, 2026_____
Date

_____/s/_____
Stephanie A. Gallagher
United States District Judge

11