**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

TIA L. BROWN,

Plaintiff,

v.

XAVIER A. CONAWAY, Clerk of the Circuit Court for Baltimore City,

Defendant.

Civil Action No.: SAG-25-02775

**MEMORANDUM OPINION**

Self-represented plaintiff Tia L. Brown ("Plaintiff") has filed a motion for leave to amend her complaint against Defendant Xavier A. Conaway, the Clerk of the Circuit Court for Baltimore City ("Conaway"). ECF 32. Conaway has opposed the motion, ECF 33, and Plaintiff filed a reply, ECF 34. This Court has carefully reviewed all of the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons stated herein, Plaintiff's motion for leave to amend will be denied.

## I. FACTUAL BACKGROUND

The following facts are derived from the proposed Amended Complaint, ECF 32-1, and are taken as true for purposes of this motion:

Plaintiff was embroiled in ongoing custody and child support proceedings in the Circuit Court for Baltimore City for many years, beginning in 2010. *Id.* ¶¶ 1–21. In relevant part, in September of 2015, the family court case was dismissed for lack of prosecution. *Id.* ¶ 14. However, the documentation establishing that dismissal has been unavailable in the file maintained in the Clerk's Office for years. *Id.* Notwithstanding the dismissal, the case was returned to active status

sometime in 2016. *Id.* ¶ 15. The available paper records do not reflect the basis for the case's return to active status. *Id.*

The unavailability of the dismissal records adversely impacted Plaintiff's ability to prosecute a custody action in Kentucky in 2017. *Id.* ¶ 17. Plaintiff was then criminally prosecuted that same year. *Id.* ¶¶ 19–20. During Plaintiff's litigation of her criminal case, the State acknowledged that it could not locate grand jury transcripts associated with her prosecution.[1] *Id.* ¶ 20.

Plaintiff had reached out to a prior Court Clerk, Marilyn F. Bentley, for assistance in locating the missing dismissal records and Bentley's Clerk's Office represented that it would attempt to locate them. *Id.* ¶ 21. Xavier A. Conaway, the Defendant in this matter, took over as Court Clerk in December, 2022. *Id.* ¶ 22. Plaintiff communicated with Conaway about the missing court records and her concerns that her case had been "rigg[ed]." *Id.* She asked Conaway to identify the Clerk's office employee who had been responsible for entering the case closure information in the computerized docketing system back in September, 2015. *Id.*

Sometime after Plaintiff spoke with Conaway, the "placeholders" that had been in the physical court file in place of the missing documents were removed. *Id.* ¶ 23. Conaway told Plaintiff that "he did not believe the case was being rigged and therefore did not believe there was anything for him to do." *Id.* ¶ 24. The paper dismissal records remain missing and Plaintiff has not learned the name of the Clerk's Office employee who handled the records in 2015. *Id.* She seeks, among other relief, declarative and injunctive relief relating to the preservation of court records,

[1] It is unclear from Plaintiff's proposed amended complaint whether she attributes the missing grand jury transcripts to the Baltimore City Clerk's Office or is simply including that fact in her historical recounting of events. Either way, the transcripts were missing before Conaway became Court Clerk.

an order "requiring the clerk's Office to conduct and document a reasonable search for, or provide an accounting concerning, the September 2015 dismissal records and other specifically identified records reflected in Case Search but absent from the maintained court file," "identification or production of administrative information sufficient to determine the source and basis of the September 21, 2015 Case Search dismissal entry," and monetary damages. *Id.* ¶ 45.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 15 provides that a party seeking to amend its pleading after twenty-one days following service may do so "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). However, the Rule requires courts to "freely give leave when justice so requires." *Id.* The Fourth Circuit's policy is "to liberally allow amendment." *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010). Accordingly, leave to amend should be denied only if "prejudice, bad faith, or futility" is present. *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509–10 (4th Cir. 1986) (footnote omitted) (interpreting *Foman v. Davis*, 371 U.S. 178 (1962)); *Hart v. Hanover Cnty. Sch. Bd.*, 495 F. App'x 314, 315 (4th Cir. 2012) (per curiam). Ultimately, the decision to grant leave to amend rests in this Court's discretion. *Foman*, 371 U.S. at 182; *Laber v. Harvey*, 438 F.3d 404, 428 (4th Cir. 2006) (en banc).

Conaway contends that the proposed amendment would be futile. ECF 33 at 2. As the Fourth Circuit has stated, a proposed amendment is futile when it "is clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510; *see also* 6 Wright & Miller, Federal Practice and Procedure § 1487 (3d. ed. 2010) ("[A] proposed amendment that clearly is frivolous, advancing a claim or defense that is legally insufficient on its face, or that fails to include allegations to cure defects in the original pleading, should be denied." (footnotes omitted)).

Because Plaintiff is self-represented, her pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, No. DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), *aff'd*, 526 F. App'x 255 (4th Cir. 2013).

Moreover, a federal court may not act as an advocate for a self-represented litigant. *See Brock v. Carroll*, 107 F.3d 241, 242–43 (4th Cir. 1997) (Luttig, J., concurring in judgment); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Therefore, the court cannot "conjure up questions never squarely presented," or fashion claims for a self-represented plaintiff. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985); *see also M.D. v. Sch. Bd. of Richmond*, 560 F. App'x 199, 203 n.4 (4th Cir. 2014) (unpublished) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint).

## III. ANALYSIS

Plaintiff's proposed amended complaint is futile because it fails to cure the deficiencies in the original complaint, for several independent reasons.

First, suits against the State of Maryland, its agencies, and officials acting in an official capacity are barred under the Eleventh Amendment, absent consent. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is

proscribed by the Eleventh Amendment.") (citing *Florida Dep't of Health v. Florida Nursing Home Ass'n*, 450 U.S. 147 (1981) (per curiam)). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see, e.g.*, Md. Code Ann., State Gov't § 12-201(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Halderman*, 465 U.S. at 99 (emphasis in original).

Plaintiff has not specified whether she sues Conaway in his official or individual capacity. But the Clerk of the Circuit Court is "State personnel." Md. Code. Ann., State Gov't § 12-101(a)(11). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989) (internal citation omitted). Thus, the Eleventh Amendment bars any suit against Conaway in his official capacity for money damages. *See Puerto Rico Aqueduct and Sewer Auth. v. Metcalfe and Easy, Inc*., 506 U.S. 139, 144–45 (1993). Plaintiff describes no actions taken by Conaway in his individual capacity. Each action she asserts he took or did not take was in the context of executing his official duties and not a matter of personal action outside his lawful authority. *See Borkowski v. Balt. Cty.,* 414 F. Supp. 3d 788, 808 (D. Md. 2019) (internal citations omitted) (requiring allegations of "personal fault based upon a defendant's own conduct"). To the extent she intended to assert individual capacity claims for monetary damages, then, they are also futile.

Second, even as to the other forms of relief Plaintiff seeks, she has failed to state a viable claim against Conaway. Plaintiff argues that she is mounting a "backward-looking denial-of-access claim" as described in *Christopher v. Harbury*, 536 U.S. 403 (2002). ECF 34 at 3. In *Christopher,* a plaintiff alleged that U.S. Government officials had intentionally deceived her by

concealing that the Central Intelligence Agency ("CIA") was paying military officers of a foreign government to detain and torture her husband, a foreign dissident. *Id.* at 405. The intentional concealment, Plaintiff argued, deprived her of access to the courts in time to seek emergency relief to save her husband's life. *Id.* at 411.

This case is readily distinguishable. Conaway is not alleged to have intentionally concealed anything. Plaintiff is simply dissatisfied with his efforts to investigate records that went missing many years before he became Clerk. Moreover, Plaintiff has not satisfied the requirements described in *Christopher* for a denial-of-access claim. The *Christopher* Court described two general categories of "denial of access" claims. The first is forward-looking, where a plaintiff is unable to pursue a particular claim in the future because of a condition frustrating her access to courts. *Id.* at 413. The second is backward-looking, *e.g.*, claims for the "loss or inadequate settlement of a meritorious case" or "loss of opportunity to seek some particular order of relief." *Id.* at 414.

In this case, Plaintiff's complaint appears to include general averments both about potential future litigation in which she desires to use the dismissal records and opportunities she believes she missed in prior litigation because the records were missing. *See* ECF 32-1 ¶ 17 (arguing that because she lacked the official record of the dismissal, the "Kentucky court thereafter found that the Maryland case had not been dismissed"); *id.* ¶ 18 (suggesting that the missing records "subsequently became relevant to criminal proceedings arising from the parties' custody dispute and affected the legal and factual framework through which Plaintiff's custody status, defenses, and jurisdictional challenges were evaluated."); *id.* ¶ 37 (pleading an "ongoing inability to obtain a complete and reliable accounting of records material to proceedings that continue to affect her legal rights and ability to seek judicial review."). But in either category, Plaintiff has failed to meet

*Christopher*'*s* requirement that she identify "a 'nonfrivolous,' 'arguable' underlying claim" that would prevail or would have prevailed with the missing records. 536 U.S. at 415. Focusing on her backward-looking claims, Plaintiff's own allegations establish that by the time the Kentucky judge found that the case had not been dismissed, it had been returned to active status. *See* ECF 32-1 ¶¶ 15, 17. She cannot plausibly allege that the missing paper records would have led the Kentucky judge to a different conclusion. As for her forward-looking claims, generalized statements that her legal rights and ability to seek judicial review will be negatively impacted are insufficiently detailed to support a denial-of-access claim. *See Christopher*, 536 U.S. at 417–18 (noting that the predicate claim underlying a denial-of-access claim must itself satisfy Rule 8(a)'s requirements and be pleaded "as if it were being independently pursued").

Plaintiff's case is also unable to clear another hurdle. Unlike in *Christopher*, where the plaintiff would have obtained the relevant information about the CIA's actions had the government not concealed it, Plaintiff cannot plead that Conaway would have found the missing eleven-year-old records even if he had conducted the search she requested in the way she requested it. And she cannot establish that Conaway had a statutory duty to accede to her requests. Plaintiff cites to a Clerk's statutory duty to "maintain custody of the court's books, records, and papers; make proper and legible entries of court proceedings and maintain them in permanent form; record papers when required by law; and provide access to records within the Clerk's custody as permitted by law." *See* ECF 34 at 2 (citing Md. Code Ann., Cts. & Jud. Proc. 2-201(a)(1)-(4)). She also cites to code provisions and rules governing a Clerk's destruction or disposition of court records. *See id.* But she cites to no authority mandating that a Clerk embark upon a particular method of investigation in response to a citizen complaint about records that have been missing for years.

In sum, Plaintiff has not plausibly alleged (and, based on the facts of this case, cannot plausibly allege) that Conaway violated her constitutional right to access to the courts by failing to conduct the search she requested. For those reasons, Plaintiff's Motion for Leave to File an Amended Complaint, ECF 32, will be DENIED. This case will be closed.

A separate Order follows.

Dated: September 23, 2026

/s/
Stephanie A. Gallagher
United States District Judge